■ In the Matter of HOME OFFICE REFERENCE LABORATORY, INC., Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants.—Weiss, J. Appeal from a judgment of the Supreme Court at Special Term (Pennock, J.), entered January 28, 1985 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to, inter alia, review a determination of respondent Commissioner of Health subject-

ing petitioner to the licensing and assessment provisions of the Public Health Law.

Petitioner is a Kansas corporation which performs laboratory tests on blood and urine samples, generally drawn by paramedics, from thousands of New York residents who are applicants for policies issued by life insurance companies doing business in this State. The samples are tested in Kansas for, *inter alia,* elevated levels of glucose, which may indicate the presence of diabetes, and high levels of cholesterol, indicating increased risk of circulatory disease. On May 27, 1983, pursuant to regulation (10 NYCRR 58-3.1) established by the Department of Health under Public Health Law § 576 (4), respondent Commissioner of Health assessed petitioner for laboratory inspection and reference fees based upon the "annual volume of tests performed and/or specimens examined". Payment was a prerequisite for issuance of the 1983-1984 permit. Petitioner paid the assessment under protest on June 16, 1983, contending that it was not a "clinical laboratory" within the meaning of the Public Health Law and that the assessment offended constitutional protections. On November 21, 1983, petitioner's attorney wrote to the Commissioner seeking a declaratory ruling pursuant to State Administrative Procedure Act § 204 as to whether it was subject to Public Health Law, article 5, title 5, and if so, whether the application of the statute to petitioner was preempted by Federal law, or was unconstitutional as violative of the due process and/or the commerce clause. The Commissioner never replied to the letter and, by notice of petition dated April 19, 1984, petitioner commenced a CPLR article 78 proceeding to annul respondents' actions imposing and collecting the assessment, to determine the statute inapplicable to it, and for return of the 1983 assessment fee of $5,120 which it paid. Special Term granted the petition, holding that petitioner was not a "clinical laboratory" within the meaning of the Public Health Law and, having thus held, directed the return of the assessment fee paid. Respondents have appealed.

The determination of whether petitioner is a "clinical laboratory" within the statutory definition* depends upon whether its tests upon blood and urine samples are conducted "for the

---

* When the 1983 assessment was made, a clinical laboratory was defined as: "a facility for the microbiological, serological, chemical, hematological, biophysical, cytological or pathological examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease or the assessment of *medical* condition" (Public Health Law § 571 [1]; emphasis supplied). The under-

*(n. cont'd)*

diagnosis, prevention, or treatment of disease or the assessment of medical condition" (Public Health Law § 571 [1]). Contending that it only issues reports to insurance companies, petitioner urges that it is not within the scope of the definition of a clinical laboratory. Respondents urge that applicants for insurance may be induced to incorrectly forego or seek medical advice or treatment; that petitioner is free to expand its services; that the Department has no ability to independently identify those laboratories servicing only insurance companies and that the statute does not specifically exempt such laboratories.

Here, it is necessary to construe the term "clinical laboratory", a technical statutory phrase, to determine whether petitioner is subject to regulation by respondents and liable for payment of the assessment imposed. Generally, the construction of technical statutory phrases by the agency which administers the statute will be upheld if such construction is neither irrational nor unreasonable (Matter of Howard v Wyman, 28 NY2d 434, 438). On the other hand, where, as here, the question involves only "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent", courts are not constrained to accept and follow the agency's reasoning (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). In construing the statute, effect must be given to legislative intent, giving due consideration to the statute's legislative history (see, Rankin v Shanker, 23 NY2d 111, 114). The statute was enacted to decrease the probability of the prescription of erroneous medical treatment due to improper analysis of specimens (Governor's memorandum, 1964 NY Legis Ann, at 505-506). The statutory framework reflects this purpose. Public Health Law § 570 declares that it is the performance by clinical laboratories, which furnish information invaluable to the diagnosis and treatment of disease to the medical practitioner, that the statute seeks to regulate, and section 580 (2) states that the only activities regulated by the title are those constituting "patient services or services provided to health officers or their agents for sanitary purposes". Since none of petitioner's activities fall within the foregoing, to adopt respondents' reasoning would constitute "unwarranted judicial legislation" (Matter of Howard v Wyman, supra, p 438), a clearly improper result. Accordingly, we conclude that petitioner is not a "clinical laboratory" within the context of Public Health Law, article 25, title 5.

---

scored term has since been replaced by the term "health" (L 1984, ch 958, § 3, eff Nov. 4, 1984).

We further conclude that petitioner is entitled to a refund of the 1983 assessment fee that it paid. In *American Assn. of Bioanalysts v Axelrod* (106 AD2d 53) this court found the 1983 fee schedule ineffective since it was not properly promulgated and filed *(see,* NY Const, art IV, § 8). It follows that all fees premised on the 1983 fee schedule were void, thus entitling petitioner to an appropriate refund *(see, People v Harris Corp.,* 104 AD2d 130, 133-134; *see generally,* 2 NY Jur 2d, Administrative Law, §§ 23, 64, at 37, 92-93).

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur. [127 Misc 2d 444.]